IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

|  |  |  |
|---|---|---|
| CASSANDRA D. HAMILTON, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|         v. | ) | Civil No. 3:15cv716 (REP) |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
|     Defendant. | ) | |

## REPORT AND RECOMMENDATION

On March 13, 2012, Cassandra D. Hamilton ("Plaintiff") applied for Social Security

Disability Benefits ("DIB") and for Supplemental Security Income ("SSI") under the Social

Security Act ("Act"), alleging disability from a lower back condition, hypertension and diabetes,

with an alleged onset date of February 9, 2012. The Social Security Administration ("SSA")

denied Plaintiff's claims both initially and upon reconsideration. Thereafter, an Administrative

Law Judge ("ALJ") denied Plaintiff's claims in a written decision and the Appeals Council

denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the

Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g),

arguing that the ALJ erred by failing to assess Plaintiff's major depression as a severe

impairment, by failing to include all of Plaintiff's limitations in the residual functional capacity

("RFC"), and in posing an insufficient hypothetical question to the Vocational Expert ("VE").

(Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 14) at 2.) This matter now

comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)

on the parties' cross-motions for summary judgment, rendering the matter now ripe for review.[1]

For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary

Judgment (ECF No. 12) be DENIED, that Plaintiff's Motion to Remand (ECF No. 13) be

DENIED, that Defendant's Motion for Summary Judgment (ECF No. 15) be GRANTED and

that the final decision of the Commissioner be AFFIRMED.

## I.    PROCEDURAL HISTORY

On March 13, 2012, Plaintiff filed applications for DIB and SSI with an alleged onset

date of February 9, 2012. (R. at 234–51.) The SSA denied these claims initially on June 20,

2012, and again upon reconsideration on December 7, 2012. (R. at 115, 124, 126.) At Plaintiff's

written request, the ALJ held a video hearing on May 15, 2014. (R. at 46.) On July 24, 2014,

the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not

qualify as disabled under the Act, because Plaintiff could perform her past relevant work and

other work that exists in significant numbers in the national economy. (R. at 32-34.) On

October 14, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's

decision as the final decision of the Commissioner subject to review by this Court. (R. at 1.)

## II.    STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the

Social Security Administration's disability determination 'when an ALJ has applied correct legal

standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v.

Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d

---

[1]    The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc.
R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal
identifiers such as Plaintiff's social security number, the names of any minor children, dates of
birth (except for year of birth), and any financial account numbers from its consideration of
Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to
only the extent necessary to properly analyze the case.

337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's

3

RFC, accounting for the most that the claimant can do despite her physical and mental limitations. 20 C.F.R. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

### III.   THE ALJ'S DECISION

On May 15, 2014, the ALJ held a hearing during which Plaintiff (represented by counsel) and a VE testified. (R. at 46-76.) On July 24, 2014, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 34.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 21-34.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 9, 2012. (R. at 21.) At step two, the ALJ found that Plaintiff had the following severe impairments: discogenic/degenerative back disorder, essential hypertension, diabetes mellitus and obesity. (R. at 21.) At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 22.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could occasionally climb ladders, ropes and scaffolds, and frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl. (R. at 24.) Plaintiff must avoid concentrated exposure to hazards. (R. at 24.) At step four, the ALJ found that Plaintiff could perform past relevant work as a warehouse supervisor and a retail cashier. (R. at 32.) At step five, the ALJ found that Plaintiff could

4

perform other jobs existing in the national economy. (R. at 34.) Therefore, Plaintiff did not

qualify as disabled under the Act. (R. at 34.)

IV.    ANALYSIS

Plaintiff, fifty-four years old at the time of this Report and Recommendation, previously

worked as a cashier, an operations specialist, an inventory control specialist, a warehouse

supervisor and a shift manager. (R. at 51-54.) She applied for Social Security Benefits, alleging

disability from a lower back condition, hypertension and diabetes, with an alleged onset date of

February 9, 2012. (R. at 77, 298.) Plaintiff's appeal to this Court alleges that the ALJ erred by

failing to evaluate Plaintiff's depression as a major impairment, by failing to include all of

Plaintiff's limitations in her RFC and in posing an insufficient hypothetical to the VE. (Pl.'s

Mem. at 6-13.) For the reasons set forth below, the ALJ did not err in his decision.

A. The ALJ properly found that Plaintiff did not have severe mental limitations.

Plaintiff argues that the ALJ erred by failing to evaluate Plaintiff's major depression as a

severe impairment at step two. (Pl.'s Mem. at 6, 9.) Specifically, Plaintiff argues that her use of

psychotropic medication, extended period of decompensation and Global Assessment of

Functioning ("GAF") score establish the severity of her depression. (Pl.'s Mem. at 8-10.)

Defendant responds that substantial evidence supports the ALJ's evaluation of Plaintiff's

depression. (Def.'s Mot. for Summ. J. and Br. in Supp. ("Def.'s Mem.") (ECF No. 15) at 11.)

At the second step of the ALJ's sequential analysis, Plaintiff must prove that she has a

"severe impairment . . . or combination of impairments which significantly limit[s] [her] physical

or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Likewise, "[a]n

impairment or combination of impairments is not severe if it does not significantly limit

[Plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).

5

The regulations require that the ALJ find Plaintiff not disabled at step two if she "do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii). Plaintiff's impairment "must [have] lasted or can be expected to last for a continuous period of not less than [twelve] months" to qualify a claimant as disabled. 20 C.F.R. § 423(d)(1)(a).

Here, the ALJ determined that Plaintiff's depression did not reach the level of a severe impairment. (R. at 21.) Rather, the ALJ found that although Plaintiff had a history of depression, no evidence demonstrated that Plaintiff's depression had more than a minimal effect on her functional capabilities. (R. at 21.) Substantial evidence supports the ALJ's determination.

Plaintiff's medical records support the ALJ's decision that Plaintiff's depression lacked the requisite severity. On May 2, 2012, during a follow-up visit with Dr. Leonid Selya, Plaintiff's treating orthopedic surgeon, Plaintiff denied any signs of depression and reported that she enjoyed good family support. (R. at 425.) On September 14, 2012, Dr. Selya noted that Plaintiff appeared in good health and in no distress. (R. at 428.) Then, on March 15, 2013, Dr. Selya noted Plaintiff's normal mood and affect. (R. at 456.)

On November 27, 2013, Dr. James W. Wooldridge, Jr., a psychiatrist, completed a discharge summary after Plaintiff's ten-day stay at Poplar Springs Hospital. (R. at 446.) Dr. Wooldridge noted Plaintiff's stable mood and affect at the time of discharge. (R. at 447.) Dr. Wooldridge opined that Plaintiff had a fair prognosis if she "is compliant with medications and treatment recommendations." (R. at 447.)

On December 17, 2013, Nurse Practitioner Nancy Wallace at the Daily Planet Health Center examined Plaintiff for a new patient physical. (R. at 478.)  Ms. Wallace noted that Plaintiff appeared alert and oriented. (R. at 478.)  Plaintiff exhibited a cooperative and appropriate mood and affect. (R. at 478.)  On January 30, 2014, Ms. Judith Parker-Falzoi, also a nurse practitioner at the Daily Planet, evaluated Plaintiff for her back, knee and ankle pain. (R. at 473.)  Ms. Parker-Falzoi also noted that Plaintiff appeared alert and oriented. (R. at 473.)

Plaintiff's daily activities also support the ALJ's decision.  Plaintiff reported that she walked and crocheted daily, prepared meals, did laundry, went outside a few times a day, shopped once a month and socialized with friends. (R. at 288-90.)  Plaintiff also reported that she could walk with a cane, drive a car, use public transportation, count change, handle a savings account and use a checkbook/money orders. (R. at 289.)  Further, Plaintiff reported that she spent time with others, saw her friends and talked with them by phone on a weekly basis. (R. at 290.)  Plaintiff denied having any issues paying attention, stated that she followed written instructions well and claimed to handle changes in routine well. (R. at 291-92.)  Additionally, Plaintiff reported that she did not need reminders to take medications or to take care of personal needs or grooming. (R. at 288.)  Therefore, substantial evidence in the record supports the ALJ's decision that Plaintiff's depression does not meet the listing's severity requirements.

Plaintiff's argument that her use of psychotropic medications for depression and anxiety indicate a severe mental limitation lacks merit.  The effective use of medication to control a symptom can provide support that Plaintiff does not suffer from a disabling limitation.  *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (finding that symptoms are not disabling if they can be reasonably controlled by medication or treatment).  Here, the ALJ determined that Plaintiff's medication effectively controlled her symptoms of depression. (R. at 30.)  The record

7

supports this determination. Plaintiff testified that Zoloft and another medication helped with her

anxiety and panic attacks. (R. at 62-63.) After an increase in Plaintiff's Zoloft dosage in

December 2013, Plaintiff's reports from the Daily Planet Health Center show an increase in

mood from depressed and worried to cooperative and appropriate, and then to pleasant and alert.

(R. at 473, 476, 478, 481.) Therefore, the ALJ properly considered Plaintiff's use of

psychotropic medications.

Likewise, Plaintiff's argument that the ALJ erred by concluding that Plaintiff did not

have any extended periods of decompensation also fails. (Pl.'s Mem. at 9.) An "extended

period" of decompensation lasts at least two weeks. 20 C.F.R. Pt. 404, Subpart P, Appendix 1

§ 12.00(c)(4). Plaintiff's medical history does not contain any evidence showing a period of

decompensation lasting at least two weeks. In November 2013, she received in-patient treatment

for mental health problems at Poplar Springs Hospital, but stayed only ten days. (R. at 446.)

Because no other evidence points to an extended period of decompensation lasting at least two

weeks, the ALJ did not err in this respect.

Finally, Plaintiff's argument that her GAF score indicates serious mental limitations also

lacks merit.[2] When hospitalized at Poplar Springs, Plaintiff had a GAF of 30 at admission and

50 at discharge. However, the latest version of the Diagnostic and Statistical Manual of Mental

Disorders has dropped the use of GAF scores, finding that their use has received criticism due to

---

[2]      Mental health clinicians and physicians use GAF scores to rate social, occupational and
psychological functioning of adults. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND
STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000). Scores ranging from 21 to 30
indicate behavioral symptoms considerably influenced by delusions, serious impairments in
communication or judgment, or inability to function in almost all areas. Id. Scores ranging from
41 to 50 indicate serious symptoms or impairments in social, occupational or school functioning.
Id. Scores ranging from 51 to 60 indicate moderate symptoms or moderate difficulty in social,
occupational or school functioning. Id.

a "conceptual lack of clarity" and "questionable psychometrics in routine practice." AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 16 (5th ed. 2013). Therefore, Plaintiff's GAF score cannot support her allegation that the ALJ erred in assessing her mental limitations.

Substantial evidence supports the ALJ's consideration of Plaintiff's mental limitations at step two. Because the ALJ properly found no severe mental limitations, he did not err in failing to include them in Plaintiff's RFC.

B. The ALJ did not err in formulating the RFC.[3]

Plaintiff alleges that the ALJ failed to include all of Plaintiff's limitations when assessing Plaintiff's ability to work. (Pl.'s Mem. at 10-14.) Specifically, Plaintiff contends that her treating physician's opinions deserved controlling weight. (Pl.'s Mem. at 13.) Additionally, Plaintiff claims that the ALJ erred in failing to incorporate Plaintiff's use of a cane into her limitations. (Pl.'s Mem. at 12.) Defendant responds that the record does not support further limitations than what the ALJ included. (Def.'s Mem. at 14-15.) For the reasons that follow, the ALJ did not err in evaluating Plaintiff's RFC.

1. The ALJ did not err in assigning little weight to the opinions of Plaintiff's treating physician.

Plaintiff first assigns error to the RFC based on the ALJ's decision not to assign controlling weight to Dr. Selya's opinions. (Pl.'s Mem. at 13.) Specifically, Plaintiff contends that Dr. Selya, as a treating physician, deserved controlling weight with respect to his opinions regarding Plaintiff's standing, sitting, walking and lifting limitations. (Pl.'s Mem. at 13.)

---

[3]    Plaintiff frames this as an attack on the hypothetical posed to the VE. However, because the hypothetical incorporates the limitations found in the RFC where the ALJ analyzes the proper limitations, the Court will address it as an attack on the RFC. However framed, the Court must address the same ultimate issue: whether the ALJ properly considered all of Plaintiff's limitations.

Defendant responds that the ALJ properly weighed the medical opinion evidence. (Def.'s Mem. at 17.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments, that would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's provided medical records and any medical evidence resulting from consultative examinations or ordered medical expert evaluations. 20 C.F.R. §§ 404.1512(a)-(e), 404.1527, 416.912(a)-(e), 416.927. When the record contains a number of different medical opinions, including those from Plaintiff's treating sources, consultative examiners or other sources that support each other, the ALJ makes a determination based on that evidence. 20 C.F.R. §§ 404.1520b(a), 416.920b(a). If, however, the medical opinions conflict internally with each other or other evidence, then the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. §§ 404.1527(c)(2)-(6), (e), 416.927(c)(2)-(6), (e).

Under the applicable regulations and case law, the ALJ must give a treating source's opinion controlling weight if it enjoys support from medically acceptable clinical and laboratory diagnostic techniques and does not conflict with other substantial evidence in the record. *Craig*, 76 F.3d at 590; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p. Further, the regulations do not require that the ALJ accept opinions from a treating source in every situation, *e.g.*, when the source opines on the issue of whether the claimant has a disability precluding him from employment (an issue reserved for the Commissioner), or when the treating source's opinion conflicts with other evidence or when the other evidence does not support it. 20 C.F.R. §§ 404.1527(c)(3)-(4), (d), 416.927(c)(3)-(4), (d).

Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up specious inconsistencies." *Dunn v. Colvin*, 607 F. App'x. 264, 267 (4th Cir. 2015) (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an ALJ's decision regarding weight afforded a medical opinion should remain untouched unless the ALJ failed to give a sufficient reason for the weight afforded. 20 C.F.R. § 404.1527(d).

The ALJ must consider the following factors when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, those same regulations specifically vest the ALJ — not the treating source — with the authority to determine the ultimate question of a claimant's disability as defined under the Act. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

In this case, on May 2, 2012, Dr. Selya opined that Plaintiff suffered from a total disability and could not return to any productive lifestyle. (R. at 407-08.) Further, on June 13, 2012, Dr. Selya opined that Plaintiff had an impairment or combination of impairments that interfered with her ability to function independently, appropriately and effectively on a continuous basis. (R. at 411-21.) Dr. Selya opined that Plaintiff could not carry more than ten pounds, sit for more than thirty minutes, or stand or walk for more than one hour. (R. at 411-12.) The ALJ gave "little to no weight" to the opinions of Dr. Selya, because they conflicted with his own treatment notes and the overall record. (R. at 32.) The ALJ also noted that Dr.

11

Selya based his opinions on Plaintiff's subjective complaints. (R. at 32.) The record supports the ALJ's decision.

Substantial evidence supports the ALJ's decision to give little weight to Dr. Selya's opinions on the basis that they conflicted with his own treatment notes. On September 14, 2012, Dr. Selya's notes indicate that he found Plaintiff in good health with improved symptoms. (R. at 428.) On November 16, 2012, Dr. Selya again noted Plaintiff's improvement and that she could walk better and longer. (R. at 459.) She also had a more upright and balanced gait, and "overall, [was] much better." (R. at 459.) Once again, on March 15, 2013, Dr. Selya noted Plaintiff's improvement in her symptoms and endurance as well as her overall positive condition. (R. at 456.) Despite labeling Plaintiff as completely disabled, Dr. Selya treated Plaintiff conservatively with pain medications and recommendations for physical therapy, stretching and weight loss. (R. at 361-62, 407, 429, 456, 460.) The conflicts within Dr. Selya's own treatment notes support the ALJ's decision not to give Dr. Selya's opinion controlling weight.

Plaintiff's treatment notes from other medical professionals also conflict with Dr. Selya's physical limitations. On December 1, 2013, Dr. James Wooldridge, Jr. noted that Plaintiff fully participated in physical activities while at Poplar Springs Hospital. (R. at 446.) On multiple occasions between December 2013 and March 2014, Plaintiff reported to various nurse practitioners at the Daily Planet Health Center that she walked several hours for exercise. (R. at 468, 471, 474, 476, 479.) These conflicts also support the ALJ's decision.

Additionally, Plaintiff's daily activities support the ALJ's decision to give less than controlling weight to Dr. Selya. On May 15, 2014, Plaintiff testified that she completed chores, including making her bed, washing out sinks and sweeping the floor. (R. at 58.) Plaintiff also

12

reported doing laundry once a month, walking, preparing simple meals, going outside once or twice a day, driving and shopping once a month. (R. at 288-90.)

Finally, the opinions of the state agency physicians support the ALJ's decision. State agency physicians provide highly qualified expertise in Social Security disability evaluations. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). On June 19, 2012, state agency physician Carl Bancoff, M.D., opined that Plaintiff could occasionally lift fifty pounds and frequently lift twenty-five pounds. (R. at 81.) Plaintiff could also stand or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. (R. at 81.) Furthermore, on December 6, 2012, W. Hakkarinen, M.D., opined that Plaintiff could occasionally lift twenty pounds and frequently lift ten. (R. at 100.) Plaintiff had the ability to stand, walk and sit for six hours in an eight-hour workday. (R. at 100.) These opinions conflict with Dr. Selya's opinions, affording the ALJ yet another basis for deciding against giving Dr. Selya's opinions controlling weight.

The ALJ sufficiently explained his reasoning for not giving controlling weight to the opinions of Plaintiff's treating physician. The conflicts between Dr. Selya's opinions and the evidence in the record support the ALJ's decision. This Court, therefore, will not disturb the ALJ's assignment of weight. Finally, the SSA regulations make clear that Dr. Selya's ultimate opinion as to Plaintiff's disability deserves no weight. 20 C.F.R. § 416.927(d)(1) ("A statement by a medical source that the claimant [is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled.") Accordingly, the ALJ did not err in concluding that Dr. Selya's opinions deserved less than controlling weight.

2. The ALJ did not err by excluding Plaintiff's use of a cane from her RFC.

Plaintiff also assigns error to the RFC based on the ALJ's alleged failure to properly consider Plaintiff's need for a cane when walking. (Pl.'s Mem. at 11-12.) Defendant responds

that the record does not support further limitations than what the ALJ included. (Def.'s Mem. at 14-15.) The Court finds that the ALJ properly excluded Plaintiff's need for a cane from her limitations.

The ALJ must include limitations affecting the RFC that find support in the record. *Johnson*, 434 F.3d at 659.  The need to use a hand-held assistive walking device may impact an individual's RFC by limiting her ability to perform lifting, carrying, pushing and pulling. *Fletcher v. Colvin*, 2015 WL 4506699, at *8 (M.D.N.C. July 23, 2015).  The ALJ considers "medically required" assistive walking devices when making his RFC assessment. *Id.* (quoting SSR 96-9p).  Plaintiff must present medical documentation:  (1) supporting the need for an assistive walking device, and (2) outlining the situations in which she needs to use such a device. *Id.* at 8.  Plaintiff can demonstrate the need for a "medically required" assistive walking device absent a prescription.  *Id.*  However, even a prescription does not dispositively establish the medical necessity of an assistive walking device.  *Id.*  If Plaintiff fails to supply appropriate documentation, the ALJ need not include the use of an assistive walking device in the RFC assessment.  *Id.*

Here, on May 23, 2014, after the hearing but before the ALJ's decision, Dr. Selya prescribed the use of a cane for Plaintiff.  (R. at 495.)  In his decision, the ALJ noted Plaintiff's prescription of a cane, but did not explicitly include it in Plaintiff's RFC or subsequent hypotheticals.  (R. at 29.)  This exclusion does not constitute an error on the part of the ALJ.

Plaintiff did not supply the appropriate documentation to support her need for a cane. Although Dr. Selya did prescribe a cane, the prescription lacks any context.  It says only "cane" and nothing else.  (R. at 495.)  It does not outline the situations in which Plaintiff will need to use a cane.  (R. at 495.)  Nor does it give any indication how long Plaintiff would need to use the

cane. *See* 42 U.S.C. §§ 423(d)(1)(A) (stating that a medically determinable impairment must last for a continuous period of at least twelve months).  Furthermore, the substantial evidence detailed above supports the ALJ's determination that Plaintiff could perform light work with the limitations listed in her RFC.  Because Plaintiff failed to establish the medical necessity of her cane, the ALJ properly excluded the use of a cane from her RFC and resulting hypotheticals to the VE.

    C.  The ALJ did not pose an incomplete hypothetical to the VE.

    Plaintiff contends that the ALJ erred at step four, because he failed to include all of Plaintiff's limitations in the hypothetical questions posed to the VE.  (Pl.'s Mem. at 10-11.)  Defendant responds that the ALJ included all of the limitations that the record supports.  (Def.'s Mem. at 15.)

    At step four of the sequential analysis, the ALJ must assess the claimant's RFC and past relevant work to determine if the claimant can perform the tasks of her previous employment.  20 C.F.R. § 404.1520(a)(4)(iv).  This determination applies not only to the claimant's ability to perform her specific previous job, but also to her ability to return to the general work that she performed in the past.  SSR 82-61.  The regulations refer to the claimant's ability to perform a "kind of work."  20 C.F.R. § 416.920(f).  This reference concentrates the inquiry "on the claimant's capacity to perform a type of activity rather than [her] ability to return to a specific job or to find one exactly like it."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  In fact, the ALJ should find the claimant not disabled if she can perform "[her] past relevant work as [she] performed it in the past or as it is generally required by employers in the national economy."  *Id.* at 1207 (citing SSR 82-61).

15

The ALJ may pose hypotheticals to a VE when determining the demands of Plaintiff's past relevant work and whether her RFC allows her to perform such work.  20 C.F.R. § 416.960(b)(2).  Only when the hypothetical posed represents all of the claimant's substantiated impairments will the testimony of the VE become "relevant or helpful." *Walker*, 889 F.2d at 50. Further, if the RFC findings and the hypothetical questions posed to the VE match, a reviewing court will find the hypotheticals "incomplete only if the ALJ failed to account for a relevant factor when determining [Plaintiff's RFC]." *Mascio*, 780 F.3d at 638.

Here, the ALJ found that Plaintiff could perform a range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could only occasionally climb ladders, ropes or scaffolds, frequently climb ramps or stairs, frequently balance, stoop, kneel, crouch and crawl, and must avoid concentrated exposure to hazards.  (R. at 24.)  The ALJ asked the VE to assume that a person with the same age, education and work experience as Plaintiff also had her limitations.  (R. at 68.)  The ALJ then asked the VE if this hypothetical person could perform any jobs that Plaintiff had worked in the past.  (R. at 68.)  The VE responded that the person could perform Plaintiff's past relevant work as a warehouse worker and as a retail supervisor, as workers normally perform those jobs.  (R. at 68.)  The VE further testified that other jobs in the national economy existed that Plaintiff could perform, including an order clerk, a production inspector and an unarmed security guard.  (R. at 68.)  Based on the VE's testimony, the ALJ found that Plaintiff could perform her past work as a warehouse supervisor and a cashier.  (R. at 32.)

The hypothetical questions posed to the VE mirrored the RFC.  Having concluded that substantial evidence supports the ALJ's RFC determination, the hypothetical questions posed to the VE adequately reflected Plaintiff's limitations and the ALJ properly relied on the VE's

testimony. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005) (finding that substantial evidence supported the ALJ's decision when the hypotheticals included all limitations that the record as a whole supported). Accordingly, substantial evidence supports the ALJ's decision that Plaintiff could perform her past relevant work and other jobs that exist in significant numbers in the national economy.

## V.    CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 12) be DENIED, that Plaintiff's Motion to Remand (ECF No. 13) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 15) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date:  August 25, 2016

17